In Re: Judy A. BUENOANO, Petitioner.

No. 98–1104.

United States Court of Appeals,
Eleventh Circuit.

March 29, 1998.

Sylvia W. Smith, Capital Collateral Counsel-Northern Region, Tallahassee, FL, for Petitioner.

Katherine V. Blanco, Candace Sabella, Assts. Attys. Gen., Tampa, FL, for Respondent.

Before TJOFLAT, COX and CARNES, Circuit Judges.

PER CURIAM:

Judy Buenoano is scheduled to be executed on the morning of March 30, 1998 for the arsenic poisoning murder of her husband James Goodyear in 1971. We have previously affirmed the denial of her first federal habeas petition. *See Buenoano v. Singletary,* 963 F.2d 1433 (11th Cir.1992), *on return from remand, Buenoano v. Singletary,* 74 F.3d 1078 (11th Cir.1996). The procedural history of the case through that stage is contained in our two prior opinions. The procedural history of the case since our last opinion was issued is contained in the Florida Supreme Court's latest opinion in the case, *Buenoano v. State,* — So.2d —, 1998 WL 133991 (Fla. Mar. 26, 1998), which affirmed the state trial court's denial of Buenoano's third state post-conviction motion and her request for stay of execution.

Buenoano has now filed a motion pursuant to 28 U.S.C. § 2244(b) seeking an order authorizing her to file and the district court to consider a second federal habeas corpus petition attacking the state court judgment pursuant to which she is to be executed. She seeks to raise two claims in that second

petition: 1) the State withheld critical exculpatory evidence of guilt or presented false or misleading evidence in violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); and 2) she was denied her right to a fair and impartial jury because one of the jurors failed to disclose during jury selection that he had been convicted of involuntary manslaughter. Buenoano raised both of these claims in her third state post-conviction proceeding, and the Florida Supreme Court's comprehensive opinion affirming the denial of relief in that proceeding accurately sets out the facts relating to each of the claims. *See Buenoano,* —— So.2d at ——.

The showing Buenoano must make before she is entitled to file a second federal habeas petition, since her claims are not based on a retroactively applicable new rule of constitutional law, is prescribed in 28 U.S.C. § 2244(b)(2)(B). Under § 2244(b)(2)(B)(i), Buenoano is required to show that the factual predicate of her claim could not have been discovered previously through the exercise of reasonable diligence. Under § 2244(b)(2)(B)(ii), she is also required to show that "the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found [her] guilty of the underlying offense."

■ As to the *Brady* and *Giglio* claim, even assuming that Buenoano has met the first requirement of § 2244(b)(2)(B), she has failed to meet the second one. Her new evidence relates to Special Agent Roger Martz's credibility. He did not even testify against her in the trial that resulted in her death sentence, which was imposed for the murder of James Goodyear. His laboratory examination of capsules Buenoano had given to John Gentry, a man with whom she was living in 1982, did lead to a stipulation at the trial that those capsules contained poison. The most Buenoano could hope to achieve with her new evidence about Special Agent Martz is erasure of that stipulation. However, even erasing that stipulation entirely, the evidence that Buenoano murdered James Goodyear in 1971, the only crime for which she was sentenced to death, is still quite strong.

It was essentially undisputed that John Goodyear, Buenoano's husband, died as a result of acute arsenic poisoning. *See Buenoano v. Singletary,* 74 F.3d at 1080. Special Agent Martz had nothing to do with that determination. Despite the fact that Goodyear was obviously seriously ill and even hallucinating, Buenoano hesitated to take him to the hospital. *See id.* Furthermore, as we have previously summarized:

> Two of Buenoano's acquaintances, Constance Lang and Mary Beverly Owens, testified that Buenoano discussed with each of them on separate occasions the subject of killing a person by adding arsenic to his food. Lang testified that Buenoano had joked on several occasions about lacing her husband's food with arsenic. Owens testified that after hearing an upsetting phone call between Owens and her husband, Buenoano suggested that Owens take out more life insurance and then poison him with arsenic. Following Goodyear's death, Buenoano collected $33,000 in life insurance proceeds and $62,000 in indemnity compensation from the Veterans Administration. Owens and another acquaintance, Lodell Morris, both testified that Buenoano admitted killing Goodyear.

*Id.* at 1080–81. There was more evidence:

> After Goodyear's death, Buenoano lived with Bobby Joe Morris, who became ill and died after exhibiting the same symptoms that Goodyear had exhibited. When Morris's remains were exhumed in 1984, the tissue analysis revealed acute arsenic poisoning. Buenoano collected approximately $23,000 in life insurance proceeds following Morris's death.

*Id.* at 1081. None of that evidence involved, either directly or indirectly, Special Agent Martz.

Accordingly, even if there is some constitutional error (which is by no means clear) connected with the new evidence relating to the stipulation about the capsules Buenoano gave to John Gentry, Buenoano clearly has

failed to meet her § 2244(b)(2)(B)(ii) burden of showing that but for that error "no reasonable factfinder would have found [her] guilty of the underlying offense."

█ Buenoano's claim concerning one of the jurors at her trial failing to disclose that he had been convicted of involuntary manslaughter is not based upon a new rule of constitutional law that the Supreme Court has made retroactively applicable to her case, so the § 2244(b)(2)(A) exception to the bar against second habeas petitions does not apply. The § 2244(b)(2)(B) exception is also inapplicable because, even if the facts she alleges concerning the juror were proven, that would not establish by clear and convincing evidence that, but for any related constitutional error, no reasonable factfinder would have found her guilty of the underlying offense.

The application for an order authorizing the filing of a second federal habeas petition is DENIED.

Buenoano's request for a stay of execution is DENIED. The panel will not entertain a petition for rehearing.

APPLICATION DENIED; STAY DENIED.