United States Court of Appeals
Fifth Circuit

**F I L E D**

March 13, 2006

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 03-51102

MICHAEL DEWAYNE JOHNSON,

Petitioner-Appellant,

VERSUS

DOUG DRETKE, Director, Texas Department of Criminal Justice,
Correctional Institutions Division

Respondent-Appellee.

Appeals from the United States District Court
For the Western District of Texas

Before DeMOSS, BENAVIDES, and DENNIS, Circuit Judges.

DeMOSS, Circuit Judge:

In a prior opinion, this panel granted Petitioner Michael Dewayne Johnson, a Texas inmate sentenced to death for the murder of Jeffrey Michael Wetterman, a certificate of appealability ("COA") on two issues of law: "(1) whether [Johnson's] alleged prosecutorial misconduct claims meet the due diligence requirement of 28 U.S.C. § 2244(b)(2)(B)(i); and (2) if so, whether Johnson's prosecutorial misconduct claims merit relief." *Johnson v. Dretke*, 394 F.3d 332, 338 (5th Cir. 2004).

In his successive habeas petition, Johnson claims that David

Vest, an accomplice and witness at his trial, confessed to the capital murder crime for which Johnson was sentenced to death. Both Johnson and Vest were charged, separately, with aggravated robbery by indictments that charged each man with shooting Wetterman. Vest signed under oath a factual stipulation, in which Vest averred that he shot Wetterman, and submitted the stipulation to the court when he pleaded guilty to the aggravated robbery count as charged. Although Vest's factual stipulation was submitted to the court, it was not read aloud at the plea hearing. Subsequently, Vest testified at Johnson's trial that Johnson shot Wetterman. Johnson argues that his sentence and conviction were obtained in violation of the U.S. Constitution because the prosecution failed to disclose Vest's factual stipulation to Johnson's counsel, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and because the prosecution knowingly presented false testimony to the jury in the form of Vest's testimony, contradicting his factual stipulation, that Johnson shot Wetterman, in violation of *Giglio v. United States*, 405 U.S. 150 (1972). The district court found that Johnson did not meet the successive petition requirements, and in the alternative, if he did, that his claims did not merit relief.

Because we conclude that Johnson cannot meet the requirements of 28 U.S.C. § 2244(b), we are constrained to AFFIRM the district court's dismissal of Johnson's successive habeas petition, even on

2

a troubling record of the State's inconsistent pretrial and trial strategy with respect to the two co-defendants.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

**A.**

The following summary of the material facts demonstrated at trial is taken from the opinion and order of the Texas Court of Criminal Appeals ("TCCA"), affirming Johnson's conviction and sentence on direct appeal. *See Johnson v. State*, No. 72,436, (Tex. Crim. App. Sept. 24, 1997).  David Vest testified for the State after pleading guilty to the aggravated robbery charge alleging that he shot Wetterman and after receiving an eight-year sentence in return for his testimony.

According to Vest, around September 8, 1995, a friend, Michael Barry, showed Vest a stolen Suburban and a nine-millimeter gun Barry had found in the stolen vehicle.  The following day, Vest visited Johnson's house while Barry was also there and saw the same nine-millimeter gun at Johnson's house.  Later that day, September 9, Vest drove around with friends, including Barry, in a stolen Cadillac, and eventually Vest dropped off all of the passengers and then picked up Johnson.  Vest and Johnson returned to Johnson's house, where by this time Barry was asleep; Johnson went inside the house and returned with the nine-millimeter gun tucked in his waistband.  The two began driving again and headed for the Texas coast.  When the stolen car's gas tank approached empty, the two

3

decided to steal gasoline from a gasoline station. The two men switched positions in the car, and Johnson drove to several gasoline stations; the pair ultimately stopped at the third, a Lorena Fastime convenience store and gas station. Vest began pumping gasoline, and as he was doing so, the clerk, Jeff Wetterman, came out of the store and began talking to him. Johnson then got out of the car and walked to the rear of the car. Vest asked Johnson whether Johnson had the weapon, and Johnson lifted his shirt revealing the gun in his waistband. Vest muttered "shit" under his breath, and as he returned the gasoline nozzle to the pump, he heard a shot and saw Wetterman fall. Johnson and Vest got back in the car and sped away. On their way home, Johnson sold the gun to a truck driver, and the next day, Vest saw an account of the murder and told his mother what happened. *Id.*, slip op. at 1-3.

In addition to Vest's testimony recounted above, other evidence was presented by the State. A witness at the scene, Wetterman's co-worker, testified that Wetterman left the store to help a customer. The witness heard a shot, and when she looked out to the pumps, she saw Wetterman on the ground and a blond-haired man standing by the passenger door of what she later identified as a Cadillac. Larry Reynolds testified that he was at Vest's house after the incident when Vest and Johnson arrived there. Reynolds testified that Johnson told him that Johnson and Vest had tried to steal gasoline and that Johnson had shot the victim in the face

4

after he thought he heard Vest say "shoot." Barry testified that he had stolen both the Suburban and the Cadillac and left the gun at Johnson's house, but that he awoke in Johnson's house to find the gun missing. When Barry asked Johnson about it, Barry testified that Johnson replied he had shot someone and was forced to dispose of the gun. A witness, Paul Muniti, also testified that Johnson said Johnson had shot someone while he and Vest were stealing gasoline. *Id*., slip op at 3-5.[1]

In presenting an alibi defense, Johnson offered the testimony of several witnesses. His mother testified that Johnson had been at his aunt's farm on the weekend of the incident, and another witness testified to having seen Johnson at the farm that weekend and having been with Johnson on the night of September 9, 1995. *Id*., slip op. at 5-6.

**B.**

Johnson was convicted in May 1996 of capital murder and sentenced to death. *See* TEX. PENAL CODE ANN. § 19.03(a)(2). The Texas Court of Criminal Appeals ("TCCA") affirmed the conviction and sentence, and the U.S. Supreme Court denied certiorari. Johnson filed his first state application for habeas relief on

---

[1]Other witnesses also identified Johnson and Vest in several locations, consistent with Vest's testimony, on the day of the shooting. Also, hair evidence from the recovered Cadillac was determined to be consistent with Johnson's, and cigarette butts found in the car revealed deoxyribonucleic acid evidence consistent with blood samples taken from both Johnson and Vest. *Id*., slip op. at 3-5.

5

October 6, 1997, and the state trial court held a hearing before recommending denial of relief. On March 29, 2000, the TCCA denied Johnson's application based on the trial court's findings. On September 13, 2000, Johnson filed his first application for federal habeas relief in the Western District of Texas. That request was denied, as was his request for a COA, and the Supreme Court denied his request for certiorari on March 24, 2003.

Approximately one week before his scheduled execution, Johnson filed a second state habeas application on February 13, 2003. There, Johnson asserted the same claims of prosecutorial misconduct he presents now in federal court (as well as the same ineffective assistance of counsel claim upon which this panel denied COA). The TCCA determined that Johnson's application was an abuse of the writ under Article 11.071 of the Texas Code of Criminal Procedure and dismissed his application on February 19, 2003.

Johnson requested leave from this Court to file a successive federal petition. A majority of this panel granted his motion to file a successive writ on February 25, 2003, authorizing the district court to consider a successive habeas corpus application and granting a stay of execution. Under AEDPA, the district court was required to dismiss Johnson's motion without reaching the merits if it found the claim did not meet the standards for a successive petition. *See* 28 U.S.C. § 2244(b)(4). The district court so dismissed Johnson's application, but then notwithstanding

that dismissal, proceeded to deny habeas relief on the merits of Johnson's claims as well. Johnson moved for a COA from that denial, claiming he meets the requirements of § 2244(b)(2)(B) for successive petitions.[2] Johnson argues he is entitled to habeas relief because his conviction and sentence were obtained in violation of the U.S. Constitution.

This panel granted a limited COA as quoted above. The parties submitted supplemental briefing, and oral argument was heard on September 13, 2005.

**C.**

David Vest was originally indicted separately from Johnson but with a nearly identical indictment. Vest's indictment charged him with two counts of first degree felony aggravated robbery, *see* TEX. PENAL CODE ANN. § 29.03(a)(1), (2), and noticed that during the commission of that felony, a deadly weapon was used and exhibited. Paragraph Two of Vest's indictment, the count charged under §

---

[2]Section 2244(b)(2)(B) provides,

(B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and

(ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

§ 2244(b)(2)(B)(i)-(ii).

7

29.03(a)(2), read,

> David Noel Vest [in the County of McLennan, State of Texas] on or about the 10th day of September, 1995, did then and there, while in the course of committing theft of property and with intent to obtain and maintain control of the property, namely gasoline, intentionally and knowingly cause bodily injury to JEFFREY MICHAEL WETTERMAN, by shooting him with a handgun, and did use and exhibit a deadly weapon, namely said firearm.

Johnson concedes that he knew of Vest's indictment, and the record reflects that Johnson's counsel was present in the courtroom at the time of Vest's guilty plea to Paragraph Two of the indictment.

With respect to Vest's guilty plea, Johnson argues that he could not have discovered the following facts, exercising due diligence, in time to include the prosecutorial misconduct claims now presented and based upon these facts in his initial habeas petition.

Vest's factual stipulation, which was signed by Vest under oath and submitted to the court in support of his plea, read:

> I stipulate that I did then and there, while in the course of committing a theft of property and with intent to obtain and maintain control of the property, namely gasoline, intentionally and knowingly cause bodily injury to JEFFERY MICHAEL WETTERMAN, by shooting him with a handgun, and did use and exhibit a deadly weapon, namely said firearm.

Thus, the factual stipulation tracked verbatim the language of Paragraph Two of the indictment, the sole count to which Vest pleaded guilty. Vest's sworn stipulation was offered in support of his plea to Paragraph Two of the indictment. At the plea hearing,

8

Vest waived a reading of the indictment.[3]

At Vest's plea, held on February 29, 1996, Mr. Crawford Long, the Assistant District Attorney who also prosecuted Johnson, and Mr. Jack Hurley, counsel for Vest, made appearances before the court. Vest identified himself to the court, averring that he was charged in the relevant case number with the offense of aggravated robbery. Vest indicated his understanding that "the State elected to proceed only on paragraph 2 of th[e] indictment." The court began to request that Mr. Long read the allegations, but counsel for Vest waived the reading of the indictment. Vest immediately pleaded guilty "to the allegations of Aggravated Robbery, as alleged in Paragraph 2 of the indictment."

The court later asked about the existence of a plea bargain between the State and Vest. Mr. Long answered that in exchange for a plea of guilty on the aggravated robbery charge, Vest would "testify truthfully and honestly in the trial of Mr. Johnson." Mr. Long tendered the plea agreement, signed by Vest, to the court which indicated its review of the agreement and then permitted the withdrawal of the agreement out of the record. The court then accepted Vest's guilty plea but declined to find him guilty,

---

[3]Although the record on appeal did not originally indicate whether Vest's sworn statement was read aloud at the plea, counsel for the State moved to supplement the record at oral argument, proffering a copy of the transcript of Vest's plea. The panel granted the State's motion to supplement, and the State later filed the transcript. After supplementation, the record also reflects what was said at the time of Vest's guilty plea.

instead ordering a presentence investigation. The hearing concluded.

Johnson argues that he could not have discovered Vest's factual stipulation supporting his plea in the exercise of due diligence because the prosecution violated its *Brady* duty to disclose the stipulation. Johnson argues the prosecution's failure to provide the stipulation is equivalent to an affirmative concealment that, as a matter of law, should satisfy the "due diligence" requirement of § 2244(b)(2)(B)(i).

## II. DISCUSSION

Johnson's successive petition is subject to the congressional requirements of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"). *See* 28 U.S.C. § 2244; *Johnson*, 394 F.3d at 334. The State raises two procedural bars under AEDPA to the success of Johnson's petition: untimeliness and procedural default. The State also argues that the petition does not satisfy § 2244(b)(2)(B). However, on this record the factual predicate of Johnson's substantive claims also bears upon the analysis of the issues of timeliness, procedural default, and "due diligence" under § 2244(b)(2)(B)(i). Accordingly, we first address the intersection of the *Brady* duty of prosecutorial disclosure and a successive petitioner's duty to demonstrate that due diligence would not have previously revealed the factual predicate of claims presented in a successive petition.

10

**A.   Johnson Has Not Demonstrated Due Diligence.**

In relevant part, AEDPA requires that Johnson's successive petition be dismissed unless "the factual predicate for the claim[s not presented in a prior application] could not have been discovered previously through the exercise of due diligence." 28 U.S.C. § 2244(b)(2)(B)(i). The parties implicitly agree that Johnson could not meet the due diligence requirement in the absence of his *Brady* claim because Johnson's only basis for satisfaction of § 2244(b)(2)(B)(i)'s due diligence requirement is that the prosecution's failure to disclose material and favorable evidence, Vest's stipulation,[4] is as a matter of law equivalent to active suppression. According to Johnson, due diligence would not produce the discovery of a factual predicate that the prosecution was required to disclose.

Johnson's primary argument is that AEDPA's due diligence requirement should not be binding upon this Court because in his view the courts exist "for the purpose of insuring that the States respect the Supreme law of the land" and in obtaining his conviction and sentence, Texas failed to do so. In essence, Johnson argues that the constitutional due process guarantee protected by *Brady* is eviscerated by AEDPA if a petitioner is required to be duly diligent in searching for evidence that should

---

[4]The parties also agree that Vest's stipulation is the factual predicate for both of Johnson's claims of prosecutorial misconduct presented here, the *Brady* and *Giglio* claims.

11

have been disclosed to him by the prosecution under *Brady*.  Johnson also argues that he meets the due diligence requirement as a matter of law because Vest's stipulation was located in a separate case file from his own and that, under the Open File policy of the prosecution at the time of the trial, the prosecution's failure to place Vest's stipulation in the Open File constitutes active suppression.  Johnson asks this Court to collapse AEDPA's due diligence requirement into the *Brady* duty such that due diligence is met under § 2244(b)(2)(B)(i) whenever a *Brady* claim has merit.

The State responds that due diligence must be demonstrated under § 2244(b)(2)(B)(i) before a court may reach the ultimate merits of a *Brady* claim.  The State argues that even assuming the *Brady* claim has merit, Johnson cannot and has not shown that Vest's stipulation could not have been discovered in the exercise of due diligence prior to the filing of his first habeas petition, because (1) Vest's stipulation was part of the public record, in Vest's file, and available to anyone who sought it, including Johnson; (2) Johnson's counsel knew of Vest's indictment and was present when Vest pleaded guilty to Paragraph Two of the indictment, and the stipulation tracked identically the language in Vest's indictment; and (3) Johnson has never explained how he ultimately discovered the stipulation, suggesting that the manner of its discovery was available to Johnson at the time he filed his initial petition.

12

To determine whether due diligence is satisfied by Johnson's inaction — or by his failure to explain what actions were taken — based upon his reliance on *Brady* disclosure, we begin with the plain language of AEDPA. *See Moore v. Cain*, 298 F.3d 361, 366 (5th Cir. 2002) (quoting *Withrow v. Roell*, 288 F.3d 199, 203 (5th Cir. 2002)). AEDPA permits the filing of a successive petition when either "*the applicant shows* that the claim relies on a new rule of constitutional law . . . ," § 2244(b)(2)(A) (emphasis added), or when "the factual predicate for the claim *could not have been discovered* previously through the exercise of due diligence" and the petitioner establishes prejudice in the absence of successive review, § 2244(b)(2)(B) (emphasis added). This distinction in congressional language between the two paths by which a successive petition may be raised informs the question presented here. While Congress requires a petitioner to bear the burden of showing that his claim relies upon a new rule of constitutional law, the language it chose with respect to a claim based upon new evidence or a new factual predicate is cast in the passive voice. As such, the plain text of § 2244(b)(2)(B) suggests that due diligence is measured against an objective standard, as opposed to the subjective diligence of the particular petitioner of record. The burden to make such a showing, of course, remains the petitioner's. § 2244; *see also Moore v. Dretke*, 369 F.3d 844, 846 (5th Cir. 2004).

13

Thus, the plain language of the statute requires that we determine not whether Johnson has shown that Vest's stipulation could not have been discovered previously through Johnson's exercise of due diligence but instead whether Vest's stipulation could have been discovered previously through the exercise of due diligence. *See* § 2244(b)(2)(B)(i). This is not necessarily a distinction without a difference, especially in the instant case where Johnson argues that with respect to *Brady* material, due diligence is objectively satisfied not by reference to Johnson's action or inaction, but instead by reference to the State's action or inaction. Were we to accept Johnson's approach, we would ask only whether Johnson had demonstrated that (1) the State bore a duty to disclose the stipulation and (2) the State failed to fulfill this duty. If so, then according to Johnson's analysis the stipulation might have been discovered by significant diligence but could not have been discovered by due diligence alone because inaction was the only response due on Johnson's behalf.

The State responds that the plain language of AEDPA creates a due diligence burden for petitioners that is higher than the elements of a *Brady* claim, even though the two are similar. The higher burden of AEDPA is acceptable, according to the State, because the assessment is jurisdictional in nature. *Compare* § 2244(b)(2)(B)(i), *with* § 2254(e)(2) (requiring due diligence but, unlike § 2244(b)(2)(B)(i) at issue here, containing an opening

14

clause that precludes an evidentiary hearing where the petitioner is "at fault" for failing to develop the factual basis of a claim in state court); *see also Williams v. Taylor*, 529 U.S. 420, 431-32 (2000) (interpreting § 2254(e)(2)'s introductory clause, "if the applicant has failed to develop the factual basis of a claim," and concluding that no failure exists in the absence of a "lack of diligence, or some greater fault" on petitioner's behalf).

In *Williams*, the Supreme Court addressed diligence under a different AEDPA provision, § 2254(e)(2), in the context of a *Brady* claim. The Court found petitioner there diligent, under the statutory requirement, in pursuing his prosecutorial misconduct claim, in part because counsel had no reason to believe the misconduct existed given that the prosecutor remained silent when asked questions that would have revealed the misconduct. *Id*. at 441-42. The record was void of evidence that would have put a reasonable attorney on notice of misconduct, and therefore defense counsel was misled affirmatively into believing no issue existed to be pursued with diligence. *Id*.

Such is not the case on this record, which includes evidence that would put a reasonable attorney on notice of the existence of Vest's stipulation. Here, Johnson knew of Vest's indictment, knew of Vest's guilty plea to the indictment as charged in Paragraph Two, and knew of Vest's submission of both the stipulation and a plea agreement to the court at his plea hearing. The record before

15

us is absolutely void of any assertion that any attempt was ever made either to request Vest's file or information about the stipulation from the prosecution or to investigate the circumstances surrounding Vest's plea, despite the fact that defense counsel was present in the courtroom at the time of the plea and aware of both the plea and the indictment. Moreover, *Williams* indicates that by "diligence" Congress intended to require more of petitioners than Johnson has demonstrated. "Diligence . . . depends upon whether the [petitioner] made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court . . . ." *Id*. at 435. However, *Williams* pertains to diligence under § 2254(e), and while it is instructive, it does not control our analysis or conclusion here.

One purpose of AEDPA is to enforce the preference for the state's interest in finality of judgment over a prisoner's interest in additional review. *See Calderon v. Thompson*, 523 U.S. 538, 557 (1998). This purpose suggests that the elements of § 2244(b)(2)(B) must be resolved prior to, and independently of, consideration of the similar elements of a *Brady* claim. In this manner the Eleventh Circuit has explained the burden upon a petitioner such as Johnson. In *Felker v. Turpin*, 101 F.3d 657, 658 (11th Cir. 1996), petitioner sought and was denied a COA on a Rule 60(b) motion for relief from judgment denying his § 2254 petition. There, the petitioner claimed that his conviction was obtained in violation of *Brady*

16

because the prosecution failed to disclose documents the petitioner ultimately discovered as a result of filing a Georgia Open Records Act lawsuit. *Id*. at 662. Addressing the intersection of petitioner's *Brady* claims with § 2244's due diligence requirement as an alternative basis for denial of COA, the court affirmed that the factual predicates for the *Brady* claims were information that "counsel for Petitioner could have sought . . . prior to the first state habeas petition." *Id*. The court reasoned that petitioner might have filed the same Open Records Act suit at any time before filing his first habeas petition and therefore failed to meet the burden required by § 2244(b)(2)(B)(i). *Id*.

Following *Felker*, the Eleventh Circuit has consistently required successive petitioners stating *Brady* claims to first show that the factual predicate could not have been discovered previously before ever reaching whether the prosecution failed to disclose *Brady* material. *See In re Buenoano*, 137 F.3d 1445 (11th Cir. 1998); *In re Jones*, 137 F.3d 1271 (11th Cir. 1998); *In re Magwood*, 113 F.3d 1544 (11th Cir. 1997); *In re Boshears*, 110 F.3d 1538 (11th Cir. 1997). Petitioner Boshears claimed the state withheld, in violation of *Brady*, a police report of an investigator's interview with a physician who examined the victim of the crime that permitted an exculpatory conclusion from the medical evidence. *Boshears*, 110 F.3d at 1540. Interpreting *Felker*, the court stated the standard required of the petitioner to

17

permit a successive filing under § 2244(b)(2)(B)(i). *Id.* "[A]n applicant seeking permission to file a second or successive habeas motion must show some good reason why he or she was unable to discover the facts supporting the motion before filing the first habeas motion." *Id.* Moreover, a petitioner who alleges no more than a lack of knowledge of the facts underlying his claim "does not pass this test." *Id.*

Thus, in addressing the intersection between successive petition due diligence and prosecutorial misconduct, the Eleventh Circuit asks "whether a reasonable investigation undertaken before the initial habeas motion was litigated would have uncovered the facts the applicant alleges are 'newly discovered.'" *Id.* In *Boshears*, the petitioner failed to make the requisite due diligence showing because he failed to explain why a reasonable investigation would not have uncovered the factual predicate of his claim and, indeed, the record demonstrated that a diligent effort would have disclosed the factual predicate prior to the filing of the first habeas petition. *Id*. at 1541 (noting that a telephone log in the public defender's office showed defense counsel made contact with the doctor whose report was sought and that defense counsel admitted to deciding not to use the doctor as a witness). Were we to adopt the Eleventh Circuit's approach, Johnson would fail to meet the due diligence requirement of § 2244 because he has done no more than allege his lack of knowledge of Vest's stipulation, the

18

factual predicate for his *Brady* claim.  In other words, Johnson both fails to show that he could not have discovered the document and he fails to offer any "good reason" why he could not locate the stipulation before the filing of the first habeas petition, irrespective of any prosecutorial disclosure duty.

However, we need not adopt the Eleventh Circuit's approach, even though the State relies upon *Felker* and *Boshears*. In this Circuit, we have previously suggested that the merits of *Brady* cannot be collapsed with the due diligence requirements of § 2244(b)(2)(B)(i).  *Kutzner v. Cockrell*, 303 F.3d 333, 337 (5th Cir. 2002) (denying petitioner's request to file a successive petition in part because petitioner failed to show that the facts underlying his *Brady* claim could not have been previously discovered through the exercise of due diligence).  There, petitioner failed to demonstrate that "prosecutorial misconduct . . . prevented him from discovering the factual basis of his successive claims at the time his first habeas petition was litigated," *id*. at 336, where the factual basis of his claim, potentially exculpatory physical evidence, was "equally available to both the defense and the prosecution" and was discussed at the petitioner's trial, *id*. Thus, in this Circuit, the *Brady* and due diligence analyses are not collapsed where the record demonstrates that the defendant or defense counsel was aware of the potential *Brady* material but failed to pursue investigation of that ultimate claim.

19

Unlike *Kutzner*, here the potentially exculpatory material, Vest's stipulation itself, was not discussed at Johnson's trial. However, the record does demonstrate that Johnson was aware of Vest's indictment and that Johnson's counsel was present at Vest's plea. The transcript of that plea reflects that Vest's factual stipulation was submitted. Thus, Johnson's counsel knew or should have known that Vest was also charged with shooting Wetterman and pleaded guilty to that charge as indicted. In light of this notice, Johnson pursued an alibi defense at his trial, and Johnson's counsel did not attempt to impeach Vest with the language of the indictment that identified Vest as the shooter. On such a record, Johnson cannot demonstrate that Vest's stipulation could not have been discovered previously in the exercise of due diligence. The failure to previously discover Vest's stipulation is objectively a bar to Johnson's successive petition, irrespective of the merits of his *Brady* claim.

This conclusion is bolstered by other Circuits' rejection of any collapse of AEDPA's duty upon successive petitioners to show due diligence into *Brady*'s duty upon prosecutors to disclose material, exculpatory information. The Fourth Circuit, citing *Williams*, recognized the AEDPA policy supporting the separation of the successive petition due diligence requirement from the prosecutorial misconduct evaluation under *Brady*. *Evans v. Smith*, 220 F.3d 306, 323 (4th Cir. 2000). In finding that the petitioner

failed to make the requisite showing of due diligence, the court implied that to reach the merits of the *Brady* claim, when petitioner had failed to show he could not have with due diligence discovered the factual basis for the claim prior to filing his first federal habeas petition, "would thwart the statutory scheme and render Congress' limitations on second or successive petitions a nullity in a wide range of cases." *Id*. at 324.

In *Cooper v. Woodford*, 358 F.3d 1117, 1124 (9th Cir. 2004), the petitioner argued that the prosecution's failure to disclose potentially exculpatory evidence constituted a *Brady* violation and permitted his successive petition, and the en banc court granted authorization to file in district court a successive petition but declined to fully review the intersection of the *Brady* claim and § 2244. Dissenting, Judge Tallman addressed the question avoided by the en banc court and the question we must address today. *Id*. at 1125 (Tallman, J., dissenting). Judge Tallman identified that AEDPA's due diligence provision in § 2244(b)(2)(B) precludes the normal review of prosecutorial misconduct. *Id*. In explaining why he would not have permitted the filing of the successive petition for the writ, Judge Tallman wrote: "[t]he proper test under § 2244(b)(2)(B)(i) is whether this information was available upon the exercise of due diligence. The warden's declaration explicitly states that she was ready and willing to share this information with the defense. . . . [T]he defense's utter failure to

21

independently investigate the issue evinces a lack of diligence." *Id.* at 1125-26.

In light of the plain text of AEDPA and our caselaw, we must conclude that a successive petitioner urging a *Brady* claim may not rely solely upon the ultimate merits of the *Brady* claim in order to demonstrate due diligence under § 2244(b)(2)(B) where the petitioner was noticed pretrial of the existence of the factual predicate and of the factual predicate's ultimate potential exculpatory relevance. Johnson has presented no more, and as such, his successive petition must be dismissed.

## B.  Johnson Cannot Satisfy 28 U.S.C. 2244(b)(2)(B)(ii).

Though we need not address it in light of the above conclusion, we note that even if we concluded that 28 U.S.C. § 2244(b)(2)(B)(i) allowed due diligence to be satisfied by a meritorious *Brady* claim, we would be forced to affirm the district court's dismissal of Johnson's successive petition because he cannot satisfy § 2244(b)(2)(B)(ii). In order for his successive petition to survive dismissal, Johnson must show that "the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, *no reasonable factfinder would have found the applicant guilty* of the underlying offense." § 2244(b)(2)(B)(ii) (emphasis added). This standard has been described as "a strict form of 'innocence,' . .

22

. roughly equivalent to the Supreme Court's definition of 'innocence' or 'manifest miscarriage of justice' in *Sawyer v. Whitley*." 2 RANDY HERTZ & JAMES S. LIEBMAN, FEDERAL HABEAS CORPUS PRACTICE & PROCEDURE § 28.3e, at 1459-60 (5th ed. 2005) (citing *Sawyer v. Whitley*, 505 U.S. 333 (1992)).

Johnson has made no such showing here. We cannot say that *no reasonable jury* would have found Johnson guilty where three witnesses, unaffected by Vest's testimony or the potentially exculpatory evidence and Vest's related plea, each testified that Johnson confessed to shooting the victim.

Because we determine that Johnson cannot meet AEDPA's filing requirements for his successive petition, *see* § 2244(b)(2)(B), we need not address the State's argument that the petition is untimely, *see* § 2244(d)(1), or procedurally barred based upon the TCCA's dismissal of the successive petition as an abuse of the writ, *see* TEX. CODE CRIM. PROC. ANN. art. 11.071, § 5.

**CONCLUSION**

Accordingly and for the foregoing reasons, we affirm the district court's dismissal of Johnson's successive habeas petition for failure to meet the requirements of § 2244(b).

**AFFIRMED**.

23