# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-10455

United States Court of Appeals
Fifth Circuit

**FILED**

April 23, 2018

Lyle W. Cayce
Clerk

In re:  ERICK DANIEL DAVILA,

          Movant

On Motion for Authorization to File
Successive Petition for Writ of Habeas
Corpus in the United States District Court
for the Northern District of Texas

Before DENNIS,* SOUTHWICK, and HAYNES, Circuit Judges.

PER CURIAM:

Erick Daniel Davila was convicted of capital murder in 2009 and is scheduled to be executed on April 25, 2018.  After his unsuccessful pursuit of relief in state court, Davila sought federal habeas relief in 2014.  The district court denied his petition in 2015, this court denied a certificate of appealability in 2016, and the United States Supreme Court affirmed our denial in 2017.  He now moves for authorization to file a successive habeas petition under 28 U.S.C. § 2244, and for a stay of his execution.  We DENY the motions.

FACTUAL AND PROCEDRUAL BACKGROUND

In February 2009, a Texas jury found Erick Daniel Davila guilty of capital murder and sentenced him to death.  The jury found that Davila used

---

* Judge Dennis concurs in the judgment and concurs as to Part I(a) only.

No. 18-10455

a semiautomatic assault rifle to open fire on a children's birthday party at a home in Fort Worth, Texas. In the process of shooting and injuring multiple party attendees, Davila killed Annette Stevenson and her granddaughter, Queshawn Stevenson, age five. As this case has been exhaustively litigated since 2009, we simply cite our 2016 opinion for a fuller recitation of the facts. *See Davila v. Davis*, 650 F. App'x 860, 863–65 (5th Cir. 2016).

Relevant to Davila's present motion for authorization, we explained in our 2016 opinion that Davila, a member of the Bloods gang, went in his girlfriend's black Mazda on the evening of April 6, 2008, to engage in what he described as a "shoot em up" with a friend. *Id.* at 864. The friend, Garfield Thompson, drove Davila both to and from the scene in the black Mazda. The investigation by Detectives Johnson and Boetcher of the Fort Worth Police Department led to Davila on April 8. Davila identified Thompson as the driver of the vehicle, and Thompson was arrested the following day.

Detective Boetcher took handwritten notes of their subsequent interview with Thompson. In addition to identifying Davila as the shooter, Thompson made two statements, according to Detective Boetcher's notes, that Davila cites as relevant to his new habeas claim. According to the interview notes, Thompson discussed "family and drug use" with the detectives. In addition, Thompson stated that at some point on the day of the murders, Davila "changed [and] started [to] be uncontrollable and you could tell it in his eyes."

The Texas Court of Criminal Appeals affirmed Davila's conviction and sentence on direct appeal. *Davila v. State*, No. AP-76,105, 2011 WL 303265, at *10 (Tex. Crim. App. Jan. 26 2011), *cert. denied*, 565 U.S. 885 (2011). Davila received an evidentiary hearing on state habeas review but was ultimately denied relief. *Ex parte Davila*, No. WR-75,356-01, 2013 WL 1655549, at *1 (Tex. Crim. App. Apr. 17, 2013), *cert. denied*, 134 S. Ct. 784 (2013).

No. 18-10455

Davila filed a federal habeas petition in April 2014. The district court denied all 11 of Davila's claims and denied a certificate of appealability ("COA"). *Davila v. Stephens*, No. 4:13-CV-506-O, 2015 WL 1808689, at *1 (N.D. Tex. Apr. 21, 2015). We denied his request for a COA in May 2016. *Davila*, 650 F. App'x at 860. The Supreme Court affirmed in June 2017. *Davila v. Davis*, 137 S. Ct. 2058 (2017). Texas thereafter moved the state court to set an execution date of April 25, 2018.

On March 27, 2018, Davila filed a subsequent state habeas petition under Texas Code of Criminal Procedure Article 11.071 § 5(a)(1). He raised three claims, including the single *Brady* claim he now seeks to raise in federal court. *See Brady v. Maryland*, 373 U.S. 83 (1963). The Texas Court of Criminal Appeals dismissed all three claims, holding in part that Davila "failed to make a *prima facie* showing of a *Brady* violation." *Ex parte Davila*, WR-75,356-03, 2018 WL 1738210, at *1 (Tex. Crim. App. Apr. 9, 2018). He now seeks our authorization under 28 U.S.C. § 2244 to file a successive federal habeas petition in the district court. His only ground is the same *Brady* claim recently dismissed in state court.

## DISCUSSION

Davila requests authorization to file a successive habeas petition under Section 2244 of the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Before analyzing whether such authorization is warranted, we briefly summarize the relevant AEDPA provisions and corresponding case law that will shape our analysis.

Under Section 2244, a petitioner seeking to file a second or successive federal habeas petition in district court must first receive authorization from a panel of this court. § 2244(b)(3). If the petitioner is seeking to raise a claim brought in a prior federal habeas petition, authorization must be denied.

3

No. 18-10455

§ 2244(b)(1). If the petitioner is seeking to raise a new claim not raised in a prior petition, we may authorize the petition to proceed only if certain statutory prerequisites are met. § 2244(b)(2).

In addition to the prerequisites of Section 2244(b)(2), Section 2244(d) supplies a one-year statute of limitations for federal habeas petitions filed by persons in state custody. § 2244(d)(1). The period runs from various potential milestones, including "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." § 2244(d)(1)(D).

In addition to the criteria for successive petitions provided by Section 2244, Davila's petition is likewise subject to the same jurisdictional prerequisites as any other federal habeas petition under Section 2254. For example, "[a] federal court generally cannot review the merits of a state prisoner's habeas petition if the claims in the petition are procedurally defaulted." *Rocha v. Thaler*, 626 F.3d 815, 820 (5th Cir. 2010).

In light of these constraints, Davila's claim can be summarized as follows. On February 8, 2018, his counsel met with Garfield Thompson. During that meeting and in a written affidavit provided thereafter, Thompson stated that he could personally testify that Davila was intoxicated on a variety of drugs at the time of the shooting. According to Thompson, the list of drugs included PCP, marijuana, and an "e-pill," which Davila alleges was ecstasy. In a subsequent meeting and written affidavit provided on March 20, 2018, Thompson further alleged that he had "told the courts in 2008 that we were on drugs." In addition, Davila argues that his counsel failed to receive Detective Boetcher's notes describing Thompson's statements about drug use and Davila's "uncontrollable" temperament until April or May of 2014 between the filing of his first and amended federal habeas petitions. According to Davila, these facts form the factual predicate for a claim under *Brady v. Maryland.*

A *Brady* claim requires that a defendant "prove that the prosecution suppressed favorable, material evidence that was not discoverable through due diligence." *Kutzner v. Cockrell*, 303 F.3d 333, 336 (5th Cir. 2002). Accordingly, Davila argues that because his prosecutor was also present for Thompson's criminal proceedings, the prosecutor would have been aware of Thompson's alleged statement to "the courts" in 2008 that he and Davila had been intoxicated on the day of the shooting. Further, he argues that Detective Boetcher's notes from the interview with Thompson were similarly unavailable to the defense at trial, known to law enforcement, and material to his intoxication defense. Essentially, Davila argues that but for the prosecution and law enforcement's failure to disclose Thompson's ability to testify about Davila's intoxication, he would have successfully utilized such testimony at trial. In the context of his current motion before this court, Davila argues that his *Brady* claim should proceed because "had this evidence been known to the jury, no reasonable factfinder would have found him guilty of capital murder."

We must therefore determine whether authorization of Davila's claim is appropriate under Section 2244. Texas argues that Davila's new claim not only fails to meet the statutory prerequisites of Section 2244 but also is procedurally defaulted and time-barred. We address each of these arguments.

I.     *Section 2244*

As discussed above, Section 2244 establishes prerequisites for a petitioner seeking to present a successive habeas petition in federal court. We have previously described Section 2244 as establishing two jurisdictional "gates" through which a petitioner must proceed to have the merits of his successive habeas claim considered. The first gate is Section 2244's requirement that a panel of this court first provide authorization for a district court to hear the claim. *In re Campbell*, 750 F.3d 523, 530 (5th Cir. 2014)

No. 18-10455

(citing § 2244(b)(4)).  To proceed through the first gate, the applicant need only make a *prima facie* showing that his claim satisfies Section 2254(b).  *Id.*

Our authorization is therefore "'tentative' in the following sense: the district court must dismiss the motion that we have allowed the applicant to file, without reaching the merits of the motion, if the court finds that the movant has not satisfied" Section 2254(b)'s requirements.  *In re Morris*, 328 F.3d 739, 741 (5th Cir. 2003) (quoting *Reyes-Requena v. United States*, 243 F.3d 893, 899 (5th Cir. 2001)).  The district court is therefore the second gate through which the petitioner must pass under Section 2244.  *Id.*

In determining whether Davila's claim may pass through the first gate, we must first determine whether Davila has ever presented his new claim in a prior federal habeas petition.  Under Section 2244, we cannot authorize his new claim to proceed if his new claim was presented in a prior petition.  § 2244(b)(1).  Davila filed his first federal petition in 2014.  On this question, Texas concedes that Davila did not raise the *Brady* claim he is now seeking to raise in his 2014 petition.

Under Section 2244(b)(2), new claims must fulfill two requirements.  First, the applicant must show that "the claim relies on a new rule of constitutional law" or "the factual predicate for the claim could not have been discovered previously through the exercise of due diligence."  §§ 2244(b)(2)(A), (B).  Second, for new factual claims, the applicant must show that "the facts underlying the claim, if proven and viewed in the light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty."  § 2244(b)(2)(B)(ii).

As stated above, Davila must make a *prima facie* showing of these two requirements to pass through the first gate.  A *prima facie* showing requires

6

a sufficient showing of possible merit to warrant a fuller explanation by the district court. If in light of the documents submitted with the application it appears reasonably likely that the application satisfies the stringent requirement for the filing of a second or successive petition, we shall grant the application.

*In re Morris*, 328 F.3d at 740 (quotation slightly edited for clarity) (quoting *Bennet v. United States*, 119 F.3d 468, 469–70 (7th Cir. 1997)).

We look first to Section 2244(b)(2)(B)'s due diligence requirement.

### a. Due diligence

When a petitioner raises a *Brady* claim in a successive petition, our analysis distinguishes between the requirements of Section 2244(b)(2) and the elements of the *Brady* claim itself. *See Johnson v. Dretke*, 442 F.3d 901, 909 (5th Cir. 2006). The need for such clarity arises from the presence of separate due diligence elements in Section 2244(b)(2) and also in our traditional *Brady* analysis. *See id.* On one hand, we have the *Brady* elements requiring prosecutorial misconduct to be the reason for a defendant's failure to discover favorable, material evidence for use *at trial*. *Kutzner*, 303 F.3d at 336. On the other hand, we have the due diligence inquiry of Section 2244(b)(2)B), which asks whether due diligence at the *time of the first habeas petition* would have resulted in the discovery of the factual basis for the new claim such that it could have been included in the first petition. Accordingly, "the elements of § 2244(b)(2)(B) must be resolved prior to, and independently of, consideration of the similar elements of a *Brady* claim." *Johnson*, 442 F.3d at 909. Alternatively stated, we can initially assume that Davila's claim is what it claims to be: a *Brady* claim. Under Section 2244(b)(2)(B), we must nonetheless deny authorization to raise the claim in a successive petition if due diligence at the time of his first habeas petition would have led to the discovery of the facts he is relying on for the new claim.

7

No. 18-10455

We must therefore determine whether Davila exhibited due diligence in the investigation of the factual basis for the *Brady* claim he now seeks to bring. § 2244(b)(2)(B)(i). To succeed at this stage, Davila must make a *prima facie* showing that he could not have discovered, through exercise of due diligence, the facts predicating his new *Brady* claim at the time he filed his first federal petition. *See Johnson*, 442 F.3d at 910.

Davila argues that for purposes of due diligence, his counsel became aware of the connection between drug use and his case in 2018 when Thompson explicitly alleged that Davila had been intoxicated on the day of the shooting. He also describes, however, how his counsel became aware of Thompson's own drug use during the investigation for his first federal habeas petition. During an interview with Davila's counsel in April 2014, Thompson "mentioned drug use in passing." According to Davila, but for Thompson's eventual decision in 2018 to mention Davila's alleged drug use and "the court's" alleged knowledge of such testimony, Davila would have never been able to discover the factual basis for his new habeas claim. Indeed, he simply states that "Thompson never revealed this information until the follow up interview on March 20, 2018. It is this evidence which is necessary to prove a *Brady* violation." On this basis, he concludes that Thompson's 2018 revelation, "coupled with the fact that Thompson was prosecuted in the same court as Davila, by the same prosecutor as Davila, [enables] Davila to file this new *Brady* claim."

Under Section 2244(b)(2)(B) and our corresponding precedent, however, more is required for a *prima facie* showing. In *Johnson*, we noted that a petitioner fails to demonstrate diligence under Section 2244(b)(2)(B) when he "was noticed pretrial of the existence of the factual predicate and of the factual predicate's ultimate potential exculpatory relevance." *Id.* at 911. In that case, two co-defendants were charged with shooting the same victim. *Id.* at 903. Johnson's co-defendant admitted in the factual stipulation for his guilty plea

8

that he shot the victim but nonetheless testified at Johnson's trial that Johnson had shot the victim. *Id.* Johnson eventually filed a successive habeas petition arguing that but for a *Brady* violation, he would have had access to the signed stipulation and would have impeached his co-defendant on the witness stand. *Id.* at 910.

We emphasized that our due diligence inquiry under Section 2244(b)(2)(B) is objective, focusing on "whether [the co-defendant's] stipulation could have been discovered previously through the exercise of due diligence." *Id.* at 908.  We held that Johnson indeed could have discovered the factual basis for his new *Brady* claim at the time of his trial, let alone at the time of his first federal petition.  *Id.* at 910.  We noted that "the record does demonstrate that Johnson was aware of [the co-defendant's] indictment and that Johnson's counsel was present at [the co-defendant's] plea. The transcript of that plea reflects that [the co-defendant's] factual stipulation was submitted. Thus, Johnson's counsel knew or should have known that [the co-defendant] was also charged with shooting [the victim] and pleaded guilty." *Id.*

Although such a finding in *Johnson* eviscerated the merit of Johnson's underlying *Brady* claim, we are nonetheless focused solely on the due diligence exercised in discovering whatever the petitioner alleges to be the basis of his new claim, regardless of whether it is meritorious. *See id.*  Accordingly, "[t]he failure to previously discover [the co-defendant's] stipulation [was] objectively a bar to Johnson's successive petition, irrespective of the merits of his *Brady* claim." *Id.*

As in *Johnson*, Davila fails to demonstrate how he was not reasonably on notice about the factual basis for his new *Brady* claim at the time of his trial, let alone at the time of his first federal petition.  He fails to provide any explanation as to why we should not arrive at the most obvious conclusion: that he has always been on notice about the underlying factual predicate for his

new claim because he himself would know whether he had taken drugs on the day of the murders and that Thompson would have seen him in such a state. The record indicates that Davila recalled Thompson's presence with him on that day as he was the one to implicate Thompson for his involvement in the crime.

Davila's own knowledge aside, we are unpersuaded that his counsel was not also reasonably on notice about the relation between drugs and the events of the shooting after Thompson had "mentioned drug use in passing" during the investigation of Davila's first habeas petition. Given Thompson's role in the shooting, Davila's counsel has been on notice about the potential value of Thompson's accounting of events since the outset of the case. In addition, Davila's emphasis on Detective Boetcher's notes as important in illustrating the drug connection cuts against Section 2244 due diligence, as his approximate accounting of when the notes came into his possession indicates that he likely had access to them at the time he amended his first federal petition.[1]

Given the lack of argument as to why the discovery of the factual predicate for his new claim exhibited due diligence, Davila would have the court simply assume that due diligence corresponds directly with the date of discovery. Such a standard plainly contradicts not only the plain language of Section 2244(b)(2)(B) but also our precedent. As we noted in *Johnson,* such an interpretation "would thwart the statutory scheme and render Congress' limitations on second or successive petitions a nullity in a wide range of cases." *Id.* at 911 (quoting *Evans v. Smith,* 220 F.3d 306, 324 (4th Cir. 2000)).

---

[1] He states, "Davila's federal habeas application was filed April 14, 2014, and Davila was not provided [Detective Boetcher's notes containing Thompson's drug-related statements] until after that date. He did not review the files of the district attorney until May of 2014. He amended his federal application on May 19, 2014."

No. 18-10455

Davila fails to make a *prima facie* showing that the factual predicate for his new habeas claim could not have been discovered through the exercise of due diligence and thus could not have been included in his first federal petition.

### b. Actual innocence

Although the requirements of Section 2244(b)(2)(B) are conjunctive, meaning that failure to demonstrate due diligence is sufficient for denial, we nonetheless address the provision's second requirement: actual innocence. To receive our authorization to proceed through the first gate, a petitioner must also make a *prima facie* showing that "the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." § 2244(b)(2)(B)(ii). We have previously described this standard as "a strict form of 'innocence,' . . . roughly equivalent to the Supreme Court's definition of 'innocence' or 'manifest miscarriage of justice' in *Sawyer v. Whitley*," 505 U.S. 333 (1992). *Johnson*, 442 F.3d at 911 (citation omitted).

Davila argues that the underlying factual predicate of his *Brady* claim meets this high bar. He argues that his "main defense in guilt and innocence was that he did not intend to harm anyone but Jerry Stevenson." According to Davila, "[s]howing the jury that [he] was so intoxicated that he had essentially become schizophrenic (someone high on PCP) would have gone a long way to support his defense."

Davila acknowledges our precedent holding that "a petitioner cannot bring a successive claim" under Section 2244(b)(2)(B) "where he does not assert that the newly discovered evidence would negate his guilt of the offense of which he was convicted, *i.e.*, capital murder." *In re Webster*, 605 F.3d 256, 257 (5th Cir. 2010) (applying 28 U.S.C. § 2255(h), the federal analogue to Section

2244(b)(2)(B)); *see also In re Cathey*, 857 F.3d 221, 233 n.76 (5th Cir. 2017) (listing cases applying *Webster* to Section 2244(b)(2)). Nonetheless, Davila maintains that even under this constraint, the underlying factual predicate of his new *Brady* claim would have resulted in a not guilty verdict from the jury if presented at trial.

Texas argues that such a possibility is foreclosed by Texas law. Under the Texas Penal Code, "[v]oluntary intoxication does not constitute a defense to the commission of a crime." TEX. PENAL CODE § 8.04(a). Even if we assume that Davila is correct in forecasting the effect of the factual basis for his new claim at trial, such evidence would not be admissible for his purposes.

Notwithstanding the barrier in Texas law, we are not persuaded that Davila successfully makes a *prima facie* showing that no reasonable juror would have found Davila guilty of the underlying defense if Thompson's testimony had been admitted. Detectives interviewed numerous people, including both Davila and Thompson, as part of their investigation. Aside from Thompson's comment about Davila's "change" toward "uncontrollable" on the day of the shooting, neither of the two individuals made any indication that Davila had been using drugs on the day of the shooting. Davila alleges that Thompson's statement would indicate him being so intoxicated that he "essentially became schizophrenic," yet the record elsewhere reflects that Davila was communicating with Thompson, giving him instructions, successfully moving around on foot, and operating a firearm with effectiveness, all during a period that Davila would also attempt to convince the jury that he was heavily intoxicated based on the statement of a co-defendant. Even if Davila opens the door to such a possibility with the jury, he has not made a *prima facie* showing that, based on the testimony, no reasonable juror would have found him guilty.

## II.     *Procedural Default*

Texas argues that denial is appropriate because Davila's claim is procedurally defaulted.  The first way under Section 2254 that a claim can be procedurally defaulted is if the petitioner did not exhaust state court remedies by presenting the claim to the highest available state court.  *See* § 2254(b)(1).  Second, even if the petitioner raised the claim in state court, the claim is procedurally defaulted in federal court if the "state court clearly and expressly bases its dismissal of a prisoner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal."  *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997).

Texas accepts that Davila exhausted his claim in state court.  *See Ex parte Davila*, 2018 WL 1738210, at *1.  Texas does argue, though, that the Texas Court of Criminal Appeals relied on an independent and adequate state ground to dismiss the claim as an abuse of the writ.  It cites our case law for the proposition that "citation for abuse of the writ is an adequate and independent state-law ground" for dismissal, making Davila's proposed federal claim procedurally defaulted.

We start by examining the Texas Court of Criminal Appeals order. It gave only a brief explanation for its dismissal.  Acknowledging Davila's *Brady* claim, the court held that Davila "has failed to make a *prima facie* showing of a *Brady* violation[.]"  *Id.*  Texas also relies on a sentence at the end of the same paragraph which states: Davila "has failed to meet the requirements of Article 11.071 § 5.  Accordingly, we dismiss this application as an abuse of the writ without reviewing the merits of the claims raised."  *Id.* at *1.

We analyzed this issue in two cases published on the same day in 2010.  *Balentine v. Thaler*, 626 F.3d 842, 853 (5th Cir. 2010); *Rocha*, 626 F.3d at 820.  In *Rocha*, we described how Texas Code of Criminal Procedure Article 11.071 § 5 contains three subsections with different requirements, all resulting in

dismissal of a claim as an abuse of the writ. 626 F.3d at 821. Under *Rocha* and *Balentine*, the first step is to determine which subsection of Section 5 the Texas Court of Criminal Appeals relied on in its dismissal. *See Balentine*, 626 F.3d at 854–55. Here, as in *Balentine*, the Texas Court of Criminal Appeals was silent as to which subsection it relied upon. "Because the state court's order gives no indication of the grounds for its decision, we look to what [Davila] presented to that court in his subsequent application." *Id.* Unlike *Balentine*, Davila did specify the subsection under which he was raising his subsequent petition: Article 11.071 § 5(a)(1).

In *Rocha*, we elaborated on the proper inquiry for dismissals based on Section 5(a)(1). We described the two-step inquiry the state court engages in to determine whether dismissal of the claim is required. *Rocha*, 626 F.3d at 833. Texas law requires the court to determine (1) whether the factual or legal basis for the new claim was unavailable as to previous applications, and (2) whether the specific facts alleged rise to a constitutional violation. *Id.* We stated that Texas courts will proceed to the second element only if the first is satisfied. *Id.* at 834. "If an applicant fails to satisfy the unavailability requirement, the § 5(a)(1) inquiry is over, and no merits determination takes place." *Id.* "Only if the applicant can surmount the unavailability hurdle does the [Texas Court of Criminal Appeals] proceed to ask whether the application makes out a claim that is *prima facie* meritorious." *Id.* This inquiry often proves difficult, however, as the state court frequently employs boilerplate language when dismissing claims as an abuse of the writ.

In a case cited in *Rocha*, we stated that "[t]he boilerplate dismissal by the [Court of Criminal Appeals] of an application for abuse of the writ is itself uncertain on this point, being unclear whether the [state court] decision was based on the first element, a state-law question, or on the second element, a question of federal constitutional law." *Ruiz v. Quarterman*, 504 F.3d 523, 527

(5th Cir. 2007). Despite such difficulty, we nonetheless held that courts must "read [the] order of dismissal to determine which of the two elements of § 5(a)(1) was the basis of the court's dismissal." *Id.* at 837.

In *Balentine*, we held that "a determination by a state court that a petitioner failed to make a '*prima facie* showing' of 'sufficient specific facts' to entitle him to relief is a decision on the merits." 626 F.3d at 853 (quoting *Rivera v. Quarterman,* 505 F3d 349, 359 (5th Cir. 2007)). Here, we are faced with potentially self-contradictory signals in the state court order as to which element of Section 5(a)(1) the court relied on in dismissing Davila's *Brady* claim. The court initially utilized merits-based language per *Balentine* in stating that Davila "has failed to make a *prima facie* showing of a *Brady* violation." *Ex parte Davila*, 2018 WL 1738210, at *1. The end of that same paragraph, however, stated, "we dismiss this application as an abuse of the writ without reviewing the merits of the claims raised." *Id.* at *1.

Perhaps one of the most important tools articulated in *Rocha* was the charge that courts are not required "to check our common sense at the door when we read an opinion of the [Texas Court of Criminal Appeals] with an eye toward ascertaining its decisional basis." 626 F.3d at 837. Here, the court's language directed at the *Brady* claim looked not to the availability of the facts underlying the claim, but rather to the elements of the claim itself required for "a *prima facie* showing of a *Brady* violation." *Ex parte Davila*, 2018 WL 1738210, at *1. Given that the *prima facie* language is directly tied to the claim at issue, we are unpersuaded by Texas's argument that the language provided at the end of the paragraph controls over what common sense would indicate to be a clear example of the merits-based language we are looking for in applying *Balentine*. *See* 626 F.3d at 853.

Davila's claim was not dismissed on the basis of an independent and adequate state procedural ground.

### III.    *Time bar*

Texas argues that regardless of whether Davila can fulfill the requirements of Section 2244(b)(2), his claim is nonetheless time-barred. Under Section 2244(d)(1)(D), a one-year statute of limitations applies to habeas claims running from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." § 2244(d)(1)(D). "We have held that this means the date a petitioner is on notice of the facts which would support a claim, not the date on which the petitioner has in his possession evidence to support his claim." *In re Young*, 789 F.3d 518, 528 (5th Cir. 2015). This requirement conceivably takes on relevance within Section 2244 for claims in which the underlying factual predicate fulfills the requirements of Section 2244(b)(2), but the petitioner nonetheless waited more than one year between discovery of the new evidence and his request for authorization to file the new claim.

We have already concluded that Davila was on notice regarding the factual predicate for his new *Brady* claim such that due diligence at the time of his trial and, in the alternative, during his first federal habeas investigation, would have reasonably led to its discovery. As we noted in *In re Young*, the time bar does not necessarily run from the date on which the petitioner alleges he discovered the new evidence, but rather the date on which he gains notice about such facts. 789 F.3d at 528. Davila was convicted in 2009, approximately nine years ago. He is well past any of the time bar metrics provided by Section 2244(d)(1)(D) in relation to his new claim. The *Brady* claim he now wishes to raise with the district court is therefore alternatively time-barred.

No. 18-10455

Because we hold that Davila failed to fulfill the requirements of Section 2244, we need not reach Texas's arguments concerning the merits of Davila's underlying *Brady* claim.

IT IS ORDERED that Davila's motion for authorization to file a successive habeas corpus petition is DENIED.

IT IS FURTHER ORDERED that Davila's motion for stay of execution is DENIED.