# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 4, 2025

Lyle W. Cayce
Clerk

No. 25-70005

RICHARD VASQUEZ,

*Petitioner—Appellant*,

*versus*

ERIC GUERRERO, *Director, Texas Department of Criminal Justice, Correctional Institutions Division*,

*Respondent—Appellee*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 2:23-CV-168

Before HAYNES, ENGELHARDT, and WILSON, *Circuit Judges*.

PER CURIAM:[*]

In 1999, Richard Vasquez was convicted and sentenced to death for the capital murder of his girlfriend's four-year-old daughter, Miranda. He now seeks to challenge his conviction and death sentence by way of a successive habeas petition.

---

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 25-70005

Vasquez filed a prior federal habeas petition in 2006, but to no avail. Years later, in 2019, when preparing for a hearing in state court, a newly hired toxicologist discovered an inconsistency in the Toxicology Report discussed at trial. Vasquez later, in 2023, sought authorization to file a successive habeas petition, under 28 U.S.C. § 2244(b)(3)(A), raising new claims based in part on this discovery. We held that Vasquez made a prima facie showing of compliance with 28 U.S.C. § 2244(b)(2)(B) and allowed him to file his petition raising an ineffective assistance of counsel claim in the district court. Conducting its own independent review, as required by 28 U.S.C. § 2244(b)(4), the district court nonetheless concluded that Vasquez could not satisfy § 2244(b)(2)(B)'s due diligence requirement and granted the State's motion to dismiss without reaching the merits of Vasquez's claim. The district court granted a certificate of appealability on this issue sua sponte.

Finding no error, we AFFIRM the district court's dismissal of Vasquez's habeas petition.

## I. Background

On the morning of March 5, 1998, Vasquez injected himself with heroin and soon thereafter drove his girlfriend, Brenda Lopez, to work.[1] Vasquez and Brenda were both so seriously addicted to drugs at the time that they had ceased to care about much else. Vasquez, Brenda, and two children lived with Vasquez's parents. The two children were Meagan, their four-month-old child, and Miranda, Brenda's four-year-old daughter from a prior

---

[1] The Texas Court of Criminal Appeals summarized the facts adduced at trial when it affirmed Vasquez's conviction on direct appeal, *Vasquez v. State*, No. 73,461 (Tex. Crim. App. Oct. 3, 2001) (affirming conviction upon direct appeal) (unpublished), and we have previously summarized these facts as they were relevant to Vasquez's first federal habeas petition. *Vasquez v. Thaler*, 389 F. App'x 419, 421–25 (5th Cir. 2010) (per curiam).

relationship. That morning, the children accompanied Vasquez to drop Brenda off; they rode in the backseat. While on the way, Vasquez became angry about having to watch the children while Brenda was at work and, as a result, being unable to obtain more drugs. After dropping Brenda off, Vasquez took the children back home. Only a few hours later, Vasquez called 911 and told authorities that Miranda was choking. When paramedics arrived, they saw that Miranda had a bump on her head, bruises on her back, and bruising around her eyes, indicating a possible head injury. She later died from her injuries.

Vasquez was charged with intentionally or knowingly causing Miranda's death by striking her on the head with his hand. Tex. Penal Code § 19.03(a)(8). As for mens rea, the State was required to prove that Vasquez acted with a conscious objective or desire to kill or was aware that his conduct was reasonably certain to cause Miranda's death. Tex. Penal Code §§ 6.03(a)–(b), 19.02(b)(1).

**A. Trial**

At trial, the circumstances surrounding Miranda's death were explained as follows. After Vasquez returned home with the children, he called Brenda to ask her where she had hidden the remainder of their drugs. When she refused to tell him, Vasquez became angry and unleashed his frustration on Miranda—striking her on the head, though he could not say how many times. Although he admitted to striking Miranda, he claimed that her fatal injuries came from falling off a stool. But evidence showed that there were "at least 20 to 30" "areas of contusion" on Miranda's body—around her face, head, trunk, "and so forth." ROA.11466. Evidence suggested that Miranda had been sexually assaulted, though Vasquez denied responsibility. Evidence was also admitted at trial demonstrating that Miranda had a lethal amount of cocaine in her system. But the medical examiner could not explain

how the cocaine got into Miranda's system, and Vasquez denied giving Miranda drugs.

To demonstrate the requisite mens rea, the State relied on evidence that: Miranda had head injuries equivalent to a high-speed vehicular ejection; perineal injuries suggestive of sexual assault; and a lethal amount of cocaine in her system, administered by Vasquez. The cocaine evidence is the focus of his successive petition. That evidence came from three sources: Dr. Backer; Dr. White; and the Toxicology Report. Dr. Backer's laboratory performed the testing that resulted in the Toxicology Report. He explained that testing revealed that a toxic amount of cocaine was put in Miranda's system an hour or two before she arrived at the hospital.[2] Dr. White, the Nueces County Medical Examiner, relied on the Toxicology Report and testified that he listed cocaine intoxication as contributing to Miranda's death in his autopsy report. The Toxicology Report was also admitted at trial.[3]

The jury found Vasquez guilty, and he was sentenced to death.

## B. Post-Conviction Challenges and Discoveries

Vasquez's initial state and federal habeas actions did not raise any issues related to the cocaine evidence.[4] In April 2015, he filed another state habeas petition after Texas enacted Article 11.073 of the Texas Code of

---

[2] Dr. Backer also explained that his lab first conducts an initial screen to determine if drugs are present. Then, if drugs are present, the lab runs a confirmatory test to determine the quantity of drugs present.

[3] Though Vasquez asserts that the State did not offer the report as a standalone exhibit, the record reveals that the report was admitted at trial as part of Miranda's medical records.

[4] *See Ex parte Vasquez*, No. WR-59,201-01, 2005 WL 287504, at *1 (Tex. Crim. App. Jan. 26, 2005) (per curiam); *Vasquez v. Quarterman*, No. CC-05-059, 2008 WL 859147, at *15 (S.D. Tex. Mar. 28, 2008).

No. 25-70005

Criminal Procedure, which allows prisoners to seek relief in Texas state court based on new scientific evidence.[5] Though that petition focused primarily on evidence regarding Miranda's head trauma, Vasquez made a new discovery regarding the cocaine evidence, in April 2019, when preparing for the hearing at the trial court.

Vasquez's counsel retained a consulting toxicologist, Dr. Valentine, to review how cocaine could have gotten into Miranda's system. Upon review, Dr. Valentine discovered that the Toxicology Report discussed at trial was flawed. The preliminary screen for "drugs of abuse," which provides either a positive or negative result, was listed as "negative," ordinarily meaning that there are no drugs present. ROA.1759-60. Nonetheless, in Vasquez's case, the Toxicology Report indicated that further testing was conducted, and the testing revealed a high quantity of cocaine in Miranda's system.

Dr. Valentine's April 2019 discovery prompted Vasquez's counsel to go back to Dr. Backer and Dr. White to point out the conflict. Both Dr. Backer and Dr. White recanted their trial testimony. Dr. Backer said that the Toxicology Report and his trial testimony were "not reliable evidence," and Dr. White stated that he "would have insisted on a second toxicology report" to verify its accuracy.

### C. Successive Federal Habeas Petition

After Vasquez's later state habeas application focusing on the cocaine evidence was dismissed,[6] he next sought authorization from this court, in

---

[5] *Ex parte Vasquez*, No. WR-59,201-03, 2016 WL 8808823, at *1 (Tex. Crim. App. Mar. 23, 2016) (per curiam) (remanding for the trial court's review).

[6] *Ex parte Vasquez*, No. WR-59,201-04, 2022 WL 17660560, at *1 (Tex. Crim. App. Dec. 14, 2022) (per curiam) (dismissing application on procedural grounds).

No. 25-70005

February 2023, to file a successive federal petition. Though his proposed petition asserted nine claims, we determined that he had made the requisite prima facie showing that he could satisfy the procedural requirements of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2244(b)(2)(B), as to only three of those claims—Claims 1, 2, and 6.[7] 28 U.S.C. § 2244(b)(3)(C). We clarified that the motion was granted relative to Claims 1 and 2 (actual innocence claims) only insofar as they provide a gateway for Claim 6—Vasquez's ineffective assistance of counsel claim based on his counsel's failure to discover the flaws in the cocaine evidence.

In the district court, the State filed a motion to dismiss the petition, arguing that Vasquez had failed to satisfy AEDPA's procedural requirements. The district court concluded that Vasquez could not satisfy § 2244(b)(2)(B)(i) because he failed to demonstrate that the factual predicate for his claim could not have been discovered previously through the exercise of due diligence. The district court then granted a certificate of appealability ("COA") on this issue. Vasquez promptly appealed.

## II. Jurisdiction & Standard of Review

We have jurisdiction under 28 U.S.C. § 2253(c)(1) because the district court granted Vasquez a COA in this case. *Wallace v. Mississippi*, 43 F.4th 482, 492 (5th Cir. 2022).[8] We review a district court's findings of fact for

---

[7] *See generally In re Vasquez*, No. 23-40079 (5th Cir. June 23, 2023) (per curiam).

[8] The State also contends that the district court's grant of a COA is invalid and should be vacated. The State says that the district court failed to make the required finding that jurists of reason would find debatable the constitutional issue Vasquez raises. But we need not linger on this issue because, even if the district court's COA is invalid, the COA's content is a mandatory but non-jurisdictional rule, *Wallace*, 43 F.4th at 493, and we conclude that it would be appropriate to issue a valid COA in its place. *United States v. Castro*, 30 F.4th 240, 247 (5th Cir. 2022) ("When we spot a defective COA . . . we can, in our discretion, consider issuing a valid COA.").

clear error and its conclusions of law de novo. *Blackman v. Davis*, 909 F.3d 772, 777 (5th Cir. 2018) (citation omitted), *as revised* (Dec. 26, 2018). A district court's dismissal of a successive § 2254 petition on the grounds that the petitioner failed to satisfy AEDPA's conditions is a legal conclusion, which we review de novo. *Mathis v. Thaler*, 616 F.3d 461, 466 (5th Cir. 2010).

## III. Discussion

AEDPA sets out "prerequisites for a petitioner seeking to present a successive habeas petition in federal court." *In re Davila*, 888 F.3d 179, 183 (5th Cir. 2018) (per curiam). AEDPA, in § 2244(b), "establish[es] two jurisdictional 'gates' through which a petitioner must proceed to have the merits of his successive habeas claim considered." *Id.* Vasquez passed through the first gate when we previously determined that he made the requisite prima facie showing of compliance with § 2244(b)(2)(B). 28 U.S.C. § 2244(b)(3)(C). But our authorization was only "tentative," *In re Davila*, 888 F.3d at 183 (citation omitted), because the district court was required, as it did here, to decide for itself whether Vasquez has satisfied § 2254(b)(2)'s requirements. 28 U.S.C. § 2244(b)(4).

At the second gate, Vasquez was required to show the district court that his new claim satisfies the following requirements:

> (i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and

> (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

*Id.* § 2244(b)(2)(B)(i)–(ii). Dismissal is appropriate when either of these requirements is not satisfied. *Id.* § 2244(b)(4).

7

Vasquez contends on appeal that the district court erred in concluding that he failed to satisfy the due diligence requirement set out in § 2244(b)(2)(B)(i). He argues that the district court applied the wrong standard. The district court considered as relevant what a "reasonable attorney" would have been aware of prior to the filing of Vasquez's first federal habeas petition. But Vasquez says that, in his case, the proper inquiry is what a "reasonable petitioner" would have been aware of at the time. Under that standard, Vasquez contends that he can satisfy the due diligence requirement. But if he is wrong about the standard and its application, Vasquez alternatively asserts that an equitable exception to the due diligence requirement is necessary in his case.

The State disagrees at each step. The State argues that the district court applied the appropriate standard, and that under the appropriate standard, Vasquez cannot satisfy the due diligence requirement. The State last contends that, diligence aside, Vasquez failed to demonstrate his innocence by clear and convincing evidence as § 2244(b)(2)(B)(ii) requires. We address the parties' arguments in turn.

## A. Due Diligence

With respect to § 2244(b)(2)(B)(i)'s due diligence requirement, we (1) discuss the applicable standard, (2) determine whether the district court correctly concluded that Vasquez failed to satisfy this requirement, and (3) briefly discuss Vasquez's assertion that an equitable exception is required in his case.

### 1. Appropriate Standard

We have analyzed § 2244(b)(2)(B)(i)'s due diligence requirement in detail and have often looked to whether a "reasonable attorney" could have

discovered or was on notice of the factual predicate for the petitioner's new claim. *See, e.g.*, *Johnson v. Dretke*, 442 F.3d 901, 908 (5th Cir. 2006).[9]

The diligence inquiry "asks whether due diligence at the *time of the first habeas petition* would have resulted in the discovery of the factual basis for the new claim such that it could have been included in the first petition." *In re Davila*, 888 F.3d at 184. Congress's use of the passive voice in § 2244(b)(2)(B)(i) indicates "that due diligence is measured against an objective standard, as opposed to the subjective diligence of the particular petitioner of record." *Johnson*, 442 F.3d at 908.

In *Johnson*, we recognized that the information a reasonable attorney would have been on notice of could be relevant to the analysis. Johnson alleged in a successive petition that the prosecution committed a *Brady*[10] violation by allowing his accomplice to testify while also failing to disclose the accomplice's signed stipulation confessing to the murder Johnson was accused of committing. *Id.* at 906. We held that Johnson could not satisfy § 2244(b)(2)(B)(i)'s due diligence requirement because a reasonable

---

[9] Often questions arise about who is responsible for exercising due diligence—a reasonable attorney, petitioner, person, or some combination—and this circuit's cases have been somewhat different approaches. *See Johnson*, 442 F.3d at 908 (looking to "evidence that would have put a reasonable attorney on notice"); *In re Cantu*, 94 F.4th 462, 472 (5th Cir. 2024) (considering "whether an objectively diligent attorney could have conducted such an investigation during the initial habeas proceeding"); *In re Carty*, 824 F. App'x 271, 276 (5th Cir. 2020) (per curiam) ("AEDPA requires that [the petitioner] make a prima facie showing that she could not have discovered the factual basis for these affidavits through the exercise of due diligence before she began her initial federal habeas proceedings."); *In re Will*, 970 F.3d 536, 542 (5th Cir. 2020) (per curiam) (looking to "evidence that would have put a reasonable person on notice" of the factual predicate); *In re Davila*, 888 F.3d at 185 ("Davila fails to demonstrate how he was not reasonably on notice . . . . Davila's own knowledge aside, we are unpersuaded that his counsel was not also reasonably on notice . . . ."). Regardless, any different approaches do not matter, as Vasquez's petition fails under any of these standards.

[10] *Brady v. Maryland*, 373 U.S. 83 (1963).

attorney would have been put on notice of the accomplice's stipulation. *Id.* at 908–09. In reaching this conclusion, we relied on *Williams v. Taylor*, 529 U.S. 420, 441–42 (2000) for the proposition that a reasonable attorney's awareness may be relevant to the analysis. *Johnson*, 442 F.3d at 909. There, when addressing diligence under a different AEDPA provision, the Supreme Court held that the petitioner was diligent, in part, because there was no evidence in the record that would have put a reasonable attorney on notice of the alleged misconduct. *Williams*, 529 U.S. at 442. Since *Johnson*, we have consistently applied this standard when analyzing § 2244(b)(2)(B)(i)'s due diligence requirement.[11]

Vasquez cannot avoid the application of this standard. He contends that this standard should not apply where a petitioner asserts a claim for ineffective assistance. Because the cases in which we have looked to a reasonable attorney's awareness have focused on withholding material exculpatory evidence in violation of *Brady* or the presentation of false or misleading testimony in violation of *Giglio*[12] and *Napue*,[13] Vasquez says that we should treat ineffective assistance claims (*Strickland*[14] claims) differently. But we disagree.

We interpreted § 2244(b)(2)(B)'s plain text in *Johnson*, and our interpretation was in no way limited to *Brady* claims. *Johnson*, 442 F.3d at 908. Nothing in *Johnson* or AEDPA supports applying a different standard based on the *type* of claim asserted. Indeed, § 2244(b)(2)(B)(i) demands

---

[11] *See, e.g.*, *Blackman*, 909 F.3d at 779; *In re Davila*, 888 F.3d at 185–86; *In re Swearingen*, 935 F.3d 415, 421 (5th Cir. 2019); *In re Will*, 970 F.3d at 542.

[12] *Giglio v. United States*, 405 U.S. 150 (1972).

[13] *Napue v. Illinois*, 360 U.S. 264 (1959).

[14] *Strickland v. Washington*, 466 U.S. 668 (1984).

diligence "without limitation to any specific claim." *See Shinn v. Ramirez*, 596 U.S. 366, 386 (2022) (interpreting § 2254(e)(2)). We lack "equitable authority to amend a statute to address only a subset of claims." *See id.* What is more, we have acknowledged that § 2244(b)(2)(B) may well foreclose ineffective assistance claims in many cases. *In re Coleman*, 768 F.3d 367, 373 (5th Cir. 2014) (per curiam). With an ineffective assistance of counsel claim, both prongs of § 2244(b)(2)(B) often "cannot be true." *Id.*

Vasquez has not demonstrated that the district court erred by looking to what a reasonable attorney would have been aware of when analyzing diligence. When a petitioner was represented at the relevant time, an attorney's awareness is relevant to determine whether a petitioner can satisfy § 2244(b)(2)(B)(i)'s due diligence requirement.

### 2. Due Diligence in Vasquez's Case

We must now decide whether the district court correctly determined that Vasquez could not satisfy § 2244(b)(2)(B)(i).[15] The district court concluded that he could not because the "building blocks" of Vasquez's successive "claim were easily available when he filed the initial federal habeas petition." We agree.

---

[15] On this point, Vasquez does not contend that a reasonable attorney, either at the time of trial or at the time of his first federal habeas petition, would not "have been put on notice of the existence of the" inconsistencies between the trial testimony and the Toxicology Report. *See Blackman*, 909 F.3d at 779 (citing *Johnson*, 442 F.3d at 908–09). Rather, Vasquez contends only that no reasonable petitioner would have been aware of the inconsistencies. But Vasquez was represented by counsel at trial and during his first federal habeas application, so, as discussed, a reasonable attorney's awareness is relevant to analyze diligence. The State asserts that Vasquez "concedes that his prior attorneys could have discovered the factual predicate of his claim." Nonetheless, we analyze Vasquez's diligence without deciding whether he has conceded this point.

Vasquez cannot satisfy § 2244(b)(2)(B)(i)'s due diligence requirement. The available evidence did not change from the time of Vasquez's trial to when his habeas counsel hired a toxicologist. The factual basis of Vasquez's new ineffective assistance claim is the flawed Toxicology Report and the conflicting trial testimony. But Vasquez's trial counsel was provided with a copy of the Toxicology Report before trial. Then, at trial, Dr. White testified that cocaine was detected in Miranda's blood. ROA.11461. He also listed cocaine intoxication as contributing to Miranda's death. ROA.11464. Dr. Backer explained that the initial toxicological testing "indicated the presence of cocaine," and further analysis revealed that there "was indeed cocaine in the blood." ROA.11433. This testimony, though, was in direct conflict with the Toxicology Report, which stated "negative" with respect to "Drugs of Abuse." ROA.6706. This conflict was readily discoverable during trial and of course thereafter, including at the time of Vasquez's first habeas petition. Though Vasquez's counsel only discovered the conflict after hiring an expert, nothing prevented his prior federal habeas counsel from likewise investigating the cocaine evidence. Indeed, a careful review of the record (especially considering Vasquez's assertion that he did not inject Miranda with cocaine) would have suggested the need for an inquiry into how trial counsel handled the cocaine evidence. "A reasonable attorney would have been put on notice" of the conflict between trial testimony and the Toxicology Report before Vasquez's prior federal habeas petition was filed. *Blackman*, 909 F.3d at 779. Also, notably, while there was a "negative" test there also was a subsequent test that did show a high quantity of cocaine, so it is not as if there is no evidence of cocaine.

### 3. AEDPA Does Not Permit Exceptions

Vasquez next contends that an exception to the due diligence requirement is necessary for cases like his. Vasquez's primary argument on this point is that the district court "erred by assuming that imputation

principles require charging a petitioner like Vasquez with any and all information a reasonable attorney could have discovered." We disagree. Vasquez has no way around AEDPA's due diligence requirement.

Vasquez is responsible for his counsel's failure to raise claims available at the time of his first federal habeas petition. This is because an "attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation." *Ramirez*, 596 U.S. at 380. In the contexts where attorney error is not considered to be the petitioner's fault, that is because "the Sixth Amendment itself requires that responsibility for the default be imputed to the State." *Id.* But because a prisoner has no constitutional right to counsel in postconviction proceedings, a prisoner must "bear responsibility for all attorney errors during those proceedings." *Id.* at 383 (citation modified); *see also Irving v. Hargett*, 59 F.3d 23, 26 (5th Cir. 1995).

Additionally, the justifications that permit courts to recognize equitable exceptions are inapplicable in the context of AEDPA's demanding statutory requirements. For instance, in *Martinez v. Ryan*, the Supreme Court recognized an equitable exception to the doctrine of procedural default where an ineffective assistance claim must be raised for the first time on initial collateral review. 566 U.S. 1, 17 (2012). But "Congress foreclosed" the expansion of *Martinez* into contexts such as this "when it passed AEDPA." *Ramirez*, 596 U.S. at 384. Unlike exceptions to the doctrine of procedural default, § 2244(b)(2)(B)(i) is a statute that courts "have no authority to amend." *Id.* at 385. "Where Congress has erected a constitutionally valid barrier to habeas relief, a court *cannot* decline to give it effect." *Id.* (citation omitted).

\*     \*     \*

At bottom, the district court properly dismissed Vasquez's successive habeas petition because he failed to demonstrate that "the factual predicate

for the claim could not have been discovered previously through the exercise of due diligence," as § 2244(b)(2)(B)(i) demands.

### B. Innocence Requirement

Though Vasquez failed to satisfy AEDPA's due diligence requirement, we will briefly discuss § 2244(b)(2)(B)(ii). In order to avoid dismissal, Vasquez must also demonstrate that the facts supporting his ineffective assistance claim "would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found [him] guilty of the underlying offense." 28 U.S.C. § 2244(b)(2)(B)(ii).

Vasquez's chief argument on this point is that, but for the cocaine evidence, no reasonable factfinder would have determined that he acted with the requisite mens rea. But that is not the case.

Significant additional evidence supports a conclusion that a reasonable jury could find Vasquez guilty beyond a reasonable doubt. To establish mens rea, the State relied not only on the cocaine evidence, but also on evidence that Miranda had severe head injuries and perineal injuries suggestive of sexual assault.

This other evidence was compelling. As for Miranda's head injuries, Vasquez admitted that he hit Miranda. Miranda had numerous "areas of contusion" around her face, head, and other areas of her body. ROA.11466. No matter how the blows are described, they resulted in severe brain damage. It was explained at trial that she was "obviously" struck on the head "hard enough to produce a fatal injury." ROA.11467. As the State argues, it is quite difficult to imagine how an adult man repeatedly inflicting blows to the head and body of a three-foot-tall, 41-pound young girl was not at least aware that those blows could kill her. Then there is still the evidence of sexual assault, which the State argued supported Vasquez's intent to kill Miranda. The

State's expert testified that Miranda's injuries were consistent with a child being restrained and sexually assaulted and that this was "really one of the most severe sexual assaults" she had seen. ROA.11408. The State asserts that such a severe sexual assault provides a motive to silence the child. Though Vasquez takes issue with the veracity and weight of this evidence, it was presented to the jury and was nonetheless more than sufficient to demonstrate that Vasquez possessed the requisite mens rea.

In the end, the facts supporting Vasquez's ineffective assistance claim do not prove clearly and convincingly that a reasonable jury would have been swayed to acquit him.[16] Thus, he has not satisfied § 2244(b)(2)(B)(ii) either.

## IV. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court dismissing Vasquez's successive habeas petition for failure to satisfy § 2244(b)(2)(B).

The motion carried with the case is DENIED AS MOOT.

---

[16] What is more, the jury was provided with the flawed Toxicology Report. So, they had the opportunity to notice the conflict and may well have disregarded it.